UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY BAKER,

        Plaintiff,

v.

ALLEGIANT MANAGEMENT GROUP LLC,
CAPITAL CURRENCY SOLUTIONS LLC,
CAPITAL CURRENCY RESOLUTIONS, LLC,
GREAT LAKES CAPITAL MANAGEMENT, LLC,
SG ALLIANCE, INC.,
CGE PROCESSING LLC,
STEPHEN P. SKOTARCZAK, and
TANISHA L. SKOTARCZAK,

        Defendants.
_____/

<u>COMPLAINT</u>

**I.**    **Introduction**

1.    This is an action for damages and other relief brought by plaintiff against the

defendant debt collectors and credit identity thieves for unlawfully acquiring and using plaintiff's

stolen credit and personal financial information to contact and falsely threaten plaintiff with

litigation, prosecution and other adverse consequences, in efforts to coerce the payment of money

from plaintiff, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692 *et seq.*, and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,*

and for breach of contract.

2.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

1

representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay alleged loans. This scheme, and similar ones operated by seemingly countless entities located in and around Corona, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with prosecution, litigation, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime. Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect any debt from the consumer. Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed. Often times, the account and related, alleged debt are counterfeit. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.      These unlawful debt collection schemes remain epidemic. On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of

litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

## II.     Jurisdiction

4.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.    Parties

5.      Plaintiff Gregory Baker is an adult, natural person. Mr. Baker is a "consumer" and "person" as the terms are defined and used in the FDCPA.

6.      Defendant Allegiant Management Group LLC ("AMG"), initially known as Clarion Recovery Services LLC, is an active New York limited liability company, registered November 21, 2017. Clarion Recovery Services LLC changed its name to Allegiant Management Group LLC on November 8, 2018. The registered address for AMG is Giove Law Office, P.C., 754 Park Place, Niagara Falls, New York 14301. AMG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. AMG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. AMG is a "debt collector" as the term is defined and used in the FDCPA.

7.      AMG has done business using multiple, unregistered assumed names, including: Conflict Resolution Center; CRC; Dispute Resolution Center; and DRC.

8.      AMG and its employees and agents use multiple telephone number to communicate with consumers when conducting their debt collection and credit identity scam, including: 713-814-9535; 713-244-6399; 716-253-6735; 833-368-9258; 833-369-9346; 833-373-

5750; 833-566-5787; 844-200-5972; 888-530-0109; 888-836-4214; 888-836-4293;  The

RespOrg for the telephone numbers is Level 3 Communications which provides telephone

numbers to multiple telecom service providers. The subscriber and billing information for these

numbers, as well as related numbers that are on the same accounts, will need to be obtained in

discovery from the telecom service provider to which Level 3 Communications has assigned

these numbers.

9.      AMG and its employees and agents use multiple aliases when communicating

with consumers and conducting their debt collection and credit identity scam, including: Max

Keller; Victor Gomez; George Marin; Brianna Smith; Ryan Johnson; Emily Griffin; Evan

Jensen; Melissa Ferris; Melissa Coleman; Linda Marley; Corey Lewis; and Rain Phillips.

10.      On November 21, 2017, defendants anonymously registered the internet domain

www.clarionrecovery.com through GoDaddy.com, LLC. Defendants used the domain to

communicate with consumers via email. For a time, the domain linked to an active internet

website that stated in part, "Our agents handle the mediation between client and consumers."

11.      On November 19, 2018, defendants anonymously registered the internet domain

www.AllegiantGroup.info through GoDaddy.com, LLC. Defendants uses the domain to

communicate with consumers via email, using multiple addresses, including

admin@allegiantgroup.info. The domain links to an active internet website that states in part,

"Allegiant Management Group specializes in collecting debts owed by an individual consumer to

a business. . . . These debt collection agencies are governed by the FDCPA, or Fair Debt

Collection Practices Act, an extensive piece of legislature designed to protect consumers who

owe money to businesses from unfair and unethical debt collection practices." The website

provides a contact telephone number of 888-530-0109 and email address of

admin@allegiantgroup.info.

12.     AMG and its employees and agents directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Baker that are described in this complaint.

13.     Defendant Capital Currency Solutions LLC ("CCS") is an active New York limited liability company, registered May 27, 2014. Documents filed by CCS with multiple governmental entities state that the principal place of business for CCS is 337 Bewley Building, Suite 506, Lockport, New York 14094-2942. CCS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CCS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CCS is a "debt collector" as the term is defined and used in the FDCPA.

14.     On June 29, 2015, CCS, through an affiliated entity, registered in the United Kingdom and listed defendant Stephen P. Skotarczak as a Director of the company.

15.     On June 17, 2014, defendants anonymously registered the internet domain www.capitalcurrencysolutions.com through GoDaddy.com, LLC. Defendants use the domain to communicate with consumers via email, using multiple addresses, including admin@capitalcurrencysolutions.com, support@capitalcurrencysolutions.com and info@capitalcurrencysolutions.com. The domain links to an active internet website that states in part, "Capital Currency Solutions is a professional, full service billing and account receivables agency. . . . We assist large and small agencies with payments they have recovered from their clients." The website provides contact telephone numbers of 800-619-3859, 833-282-1320, and 844-301-8362.

16.     CCS and its employees and agents directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Baker that are described in this complaint.

17.     Defendant Capital Currency Resolutions, LLC ("CCR") is an active New York limited liability company, registered March 12, 2020. Documents filed by CCR with multiple governmental entities state that the principal place of business for CCR is 80 Professional Parkway, Lockport, New York 14094 and that defendant Stephen P. Skotarczak is a Managing Member of CCR. CCR uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CCR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CCR is a "debt collector" as the term is defined and used in the FDCPA.

18.     The office building located at 80 Professional Parkway, Lockport, New York 14094 is owned by non-party SGA Property Management, LLC, a New York limited liability company, registered May 10, 2017. Upon information and belief, SGA Property Management, LLC is owned by one or more of the defendants named in this complaint.

19.     CCR and its employees and agents directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Baker that are described in this complaint.

20.     Defendant Great Lakes Capital Management, LLC ("GLCM") is an active New York limited liability company, registered February 10, 2015, with a registered address of 7424 Akron Road, Lockport, New York 14094, which is the residential address of the father of defendant Stephen P. Skotarczak. GLCM sometimes has done business at 556 South Transit Road, Lockport, New York 14094. GLCM sends and receives email using the address admin@greatlakes-cm.com. GLCM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. GLCM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. GLCM is a "debt collector" as the term is defined and used in the FDCPA.

6

21.     According to the State of New York Workers' Compensation Board, defendant
GLCM (WCB Employer No. 2867561) operates in Lockport, New York and provides its debt
collector employees with workers' compensation insurance (Phoenix Insurance Company, Policy
No. UB1N1043602042G, effective June 8, 2020) and disability/paid family leave insurance
(Hartford Life and Accident, Policy No. LNY775492001, effective October 26, 2016).

22.     On March 30, 2015, defendants anonymously registered the internet domain
www.greatlakescapitalmanagementllc.com through GoDaddy.com, LLC. The domain links to an
active internet website that provides contact telephone numbers 833-457-0882, 833-807-6655,
and 855-805-2131. Calls made to the telephone numbers during business hours are answered as
"Great Lakes Resolution Center." Calls made to the telephone numbers during non-business
hours are sometimes answered by a pre-recorded greeting, stating in part, "Thank you for calling
Capital Currency Solutions."

23.     GLCM and its employees and agents directly and indirectly participated in the
unlawful efforts to collect an alleged debt from Mr. Baker that are described in this complaint.

24.     Defendant SG Alliance, Inc. ("SGA") is an active New York limited liability
company, registered March 29, 2015. SGA sometimes has done business at 556 South Transit
Road, Lockport, New York 14094. SGA also has done business at 46 Pine Street, Lockport, New
York 14094. SGA uses interstate commerce and the mails in a business the principal purpose of
which is the collection of debts. SGA regularly collects or attempts to collect, directly or
indirectly, debts owed or due or asserted to be owed or due another. SGA is a "debt collector" as
the term is defined and used in the FDCPA.

25.     On October 15, 2016, defendant Capital Currency Solutions LLC registered the
internet domain www.sgabilling.com through GoDaddy.com, LLC. The domain links to an active

7

internet website that stated in part: "SG Alliance is a national, full service provider for billing

and receivable management services. We provide a solid foundation for billing services as well

as perform collection services at every stage of delinquency, for every type of account. . . . SG

Alliance services include: Payment Processing, Data Reporting, Invoices, Contingency

Collections, Pre-Legal Collections, Pre-collection, Skip tracing . . . ." The website states that

SGA does business at 556 South Transit Road, Lockport, New York 14094, and provides a

contact telephone number of 844-838-7349 and email address of support@sgabilling.com.

26.     SGA and its employees and agents directly and indirectly participated in the

unlawful efforts to collect an alleged debt from Mr. Baker that are described in this complaint.

27.     Defendant CGE Processing LLC ("CGE") is an active New York limited liability

company, FEIN 45-565xxxx, registered November 23, 2015. The registered address for CGE is

Giove Law Office, P.C., 727 Main Street, Suite 200, Niagara Falls, New York 14301. According

to the New York Department of Labor, CGE has done business at 46 Pine Street, Lockport, New

York 14094. CGE uses interstate commerce and the mails in a business the principal purpose of

which is the collection of debts. CGE regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another. CGE is a "debt collector" as

the term is defined and used in the FDCPA.

28.     CGE and its employees and agents directly and indirectly participated in the

unlawful efforts to collect an alleged debt from Mr. Baker that are described in this complaint.

29.     Defendants AMG, CCS, CCR, GLCM, SGA, and CGE are collectively referred to

as the "Corporate Defendants" in this complaint.

30.     The Corporate Defendants have operated as a common enterprise while engaging

in the unlawful credit identity theft and debt collection activities and other violations of the law that are described in this complaint. The Corporate Defendants have conducted their scam through an interrelated network of companies that have common ownership, officers, managers, business functions, employees and agents, with common and overlapping business addresses, telephone numbers and service, computers, software, databases, internet websites and email addresses, and the commingling of funds. Because the Corporate Defendants have operated as a common enterprise, each is jointly and severally liable for the unlawful acts of the others.

31.     Defendant Stephen P. Skotarczak is a natural person, age 34, purportedly residing at 5790 Strickler Road, Clarence, New York 14031. Mr. Skotarczak is an owner, officer, member, manager, employee and agent of each of the Corporate Defendants. Mr. Skotarczak uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Skotarczak regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Skotarczak is a "debt collector" as the term is defined and used in the FDCPA.

32.     Mr. Skotarczak (a) created the collection policies and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Baker as stated in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by the Corporate Defendants, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants, and their employees and agents in attempts to collect an alleged debt from Mr. Baker as stated in this complaint.

33.     Non-party Cardinal Recovery Group, LLC is an active New York limited liability company, incorporated June 21, 2017, with Mr. Skotarczak as an officer and director. It will need to be determined in discovery whether this entity participated in the attempts to collect an alleged debt from Mr. Baker.

34.     Non-party Arisy Holdings, Inc. is an active New York corporation, incorporated May 8, 2017, with Mr. Skotarczak as an officer and director. It will need to be determined in discovery whether this entity participated in the attempts to collect an alleged debt from Mr. Baker.

35.     Mr. Skotarczak directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Baker that are described in this complaint.

36.     Defendant Tanisha L. Skotarczak, also known as Tanisha L. Cline, is a natural person, age 34, purportedly residing at 5790 Strickler Road, Clarence, New York 14031. Ms. Skotarczak is an owner, officer, member, manager, employee and agent of defendant Capital Currency Solutions LLC. Ms. Skotarczak uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Skotarczak regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Skotarczak is a "debt collector" as the term is defined and used in the FDCPA.

37.     Ms. Skotarczak (a) created the collection policies and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Baker as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants, and their employees and agents in attempts to collect an alleged debt from Mr. Baker as stated in this complaint.

38.     Ms. Skotarczak directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Baker that are described in this complaint.

39.     The Corporate Defendants sometimes have used a Merchant Account established in the name of "Capital Currency Solutions LLC" to receive credit card and debit card payments from their victims. Money deposited in the Merchant Account is shared among and distributed to the various participants in the scam, including the defendants named in this complaint, as well as their employees and agents, and perhaps others. The application that was filed with the Acquiring Bank to create the Merchant Account, as well as the related monthly statements and other account records, will need to be obtained from the Acquiring Bank via subpoena in discovery, so

that Plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in defendants' debt collection scam.

40.     All defendants (and other entities to be identified in discovery and named as additional. defendants in this lawsuit) are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

41.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

42.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

43.    In and before 2006, plaintiff Gregory Baker had a checking account with Bank of America, N.A. ("BOA"), Account No. 004434600564, that Mr. Baker used to purchase goods and services for personal, family and household purposes. Any resulting obligation of Mr. Baker to pay money to BOA was a "debt" as the term is defined and used in the FDCPA.

44.    In 2006, Mr. Baker's account with BOA allegedly became delinquent.

45.    On December 7, 2006, BOA charged off and sold Mr. Baker's account, with an alleged, unpaid balance of $361.80.

46.    Mr. Baker denies owing any money to BOA or any other entity in connection with the account.

47.    Mr. Baker refuses to pay any money to BOA or any other entity in connection with the account.

48.    Even if Mr. Baker did owe any money in connection with the account, the debt is no longer judicially enforceable by operation of the applicable statute of limitations. Stated differently, the account and any alleged debt are time-barred.

49.    Over the past thirteen or so years, Mr. Baker's private personal and financial

information associated with his time-barred BOA account has been compromised, stolen, and

sold and resold to scam operators around the country, for the purpose of contacting and

threatening Mr. Baker with litigation, prosecution and other adverse consequences in efforts to

coerce the payment of money from Mr. Baker to satisfy a time-barred or non-existent debt and

stolen or counterfeit account.

50.     In 2019, the Corporate Defendants have somehow acquired Mr. Baker's private

personal and financial information, along with information regarding the BOA account, and used

that information to obtain additional personal and private information regarding Mr. Baker and

his relatives, for the purpose of contacting Mr. Baker, his relatives, and other third parties, in

efforts to coerce the payment of money from Mr. Baker, through false and unlawful threats of

litigation and other adverse consequences, as described below.

51.     On or about July 24, 2019, defendants' employee and agent, known as a "Point

Caller," placed a call to Mr. Baker's cellular telephone and left the following scripted message on

Mr. Baker's voice mail: "This message is solely intended for Gregory Baker. My name is Brianna

Smith. I've been tasked with delivering you certified documents attached to your name and

Social Security Number. I will be making several attempts to reach you at your current residence

tomorrow, July 25th, between the hours of 3:00 and 5:00 p.m. If I am unable to reach you at this

location, I'll have no choice but to deliver your documents to your place of employment, where I

would then need a Supervisor or Head of Security to sign off as a witness. If I'm unable to reach

you at either of these locations, this will be documented as a direct refusal to sign. At the time of

delivery, please have at least one form of picture identification available, preferably your drivers

license. If you have any further questions, concerns, or you need to reschedule prior to my arrival

tomorrow, it is imperative to contact the Filing Party's office directly at 833-373-5750 and refer to Index Number 529686. Gregory Baker, you have officially been notified and I will be out tomorrow between 3:00 and 5:00 p.m. so please plan accordingly."

52.    July 24, 2019, defendants' employee and agent, known as a "Point Caller," placed a call to Mr. Baker's wife's cellular telephone and left the following scripted message on Mr. Baker's wife's voice mail: "This message is solely intended for Gregory Baker. My name is Brianna Smith. I've been tasked with delivering you certified documents attached to your name and Social Security Number. I will be making several attempts to reach you at your current residence tomorrow, July 25th, between the hours of 3:00 and 5:00 p.m. If I am unable to reach you at this location, I'll have no choice but to deliver your documents to your place of employment, where I would then need a Supervisor or Head of Security to sign off as a witness. If I'm unable to reach you at either of these locations, this will be documented as a direct refusal to sign. At the time of delivery, please have at least one form of picture identification available, preferably your drivers license. If you have any further questions, concerns, or you need to reschedule prior to my arrival tomorrow, it is imperative to contact the Filing Party's office directly at 833-373-5750 and refer to Index Number 529686. Gregory Baker, you have officially been notified and I will be out tomorrow between 3:00 and 5:00 p.m. so please plan accordingly."

53.    On July 24, 2019, Mr. Baker placed a return call to telephone number 833-373-5750. The call was answered by defendants' employee and agent, who stated that Mr. Baker had called the "Dispute Resolution Center." Mr. Baker provided defendants' employee and agent with his "Index Number, 529686." Defendants' employee and agent accessed and used Mr.

Baker's private personal and financial information to verify Mr. Baker's identity. Mr. Baker was then transferred to defendants' employee and agent, who identified himself as "George Marin," and who provided his "direct telephone number" of 713-814-9535. In the ensuing conversation, defendants' employee and agent made the following statements:

a) Mr. Baker owed $861.80 on an unpaid checking account with Bank of American, N.A., that was charged off by BOA in 2006.

b) The debt was still within the statute of limitations because after the account was charged off in 2006, Mr. Baker moved to another residence and failed to provide BOA with Mr. Baker's new residential address.

c) A group of attorneys had filed a lawsuit on behalf of BOA and against Mr. Baker, to collect the debt.

d) Defendants had been retained by the group of attorneys to collect the debt from Mr. Baker by settling the matter out of court.

e) Defendants were attempting to serve the lawsuit on Mr. Baker.

f) If Mr. Baker didn't agree to settle the account and related debt with defendants, a judgment would be entered against Mr. Baker for three times the amount of the debt, being approximately $2,500.00.

54.    On July 24, 2019, in response to defendants' lies, coercion, and false threats of litigation and other adverse consequences, Mr. Baker tentatively agreed to pay money to defendants to satisfy the specious, unlawfully inflated, and time-barred debt, subject to Mr. Baker's review, approval and execution of the proposed settlement agreement and release.

55.    On July 24, 2019, Mr. Baker received an email from defendants that referred to an

16

attached "CCS Payment Arrangement." Attached to the email was a document on the letterhead of "Allegiant Management Group," captioned "Credit Card Authorization and Settlement Release Form. The attachment stated that Mr. Baker owed $861.80 on BOA Account No. 004434600564. The attachment, once signed, purported to "authorize Capital Currency Solutions, on behalf of Allegiant Management Group," to charge $861.80 to Mr. Baker's credit card, in instalments over a period of months. A copy of the email and attachment are attached as Exhibit A.

56.     On or about July 25, 2019, Mr. Baker became suspicious of defendants' threats, and upon investigation, discovered hundreds of complaints on the internet, accusing defendants of engaging in fraud, identity theft, extortion and other unlawful conduct.

57.     Mr. Baker refused to sign the Credit Card Authorization and Settlement Release Form.

58.     On or about July 30, 2019, Mr. Baker placed a call to defendants' employee and agent, George Marin, at 713-814-9535, and left a message, warning defendants' employee and agent not to make any charges to Mr. Baker's credit card for the BOA account.

59.     On July 31, 2019, defendants charged $86.18 to Mr. Baker's credit card. According to the issuing bank for Mr. Baker's credit card, the funds were deposited into a Merchant Account in the name of Capital Currency Solutions LLC.

60.     On July 31, 2019, defendants' employee and agent, George Marin, placed a call from 833-369-9346 to Mr. Baker's cellular telephone and left a message on Mr. Baker's voice mail, stating that defendants would refund the unauthorized charge that defendants made to Mr. Baker's credit card. Defendants' employee and agent then went on to continue to falsely

represent that a lawsuit had been filed against Mr. Baker and that defendants were going to have Mr. Baker served with the fake lawsuit: "They're just going to file this out for the dispute for you. If you want to provide me with your attorney's contact information, we'll have the client forward it directly to them. If not, just make sure that you sign for the documentation. I do wish you the best of luck moving forward Mr. Baker."

61.     On or about August 1, 2019, Mr. Baker retained attorney Phillip C. Rogers to investigate and pursue the entities responsible for obtaining Mr. Baker's stolen personal and financial information and using that information to contact and falsely threaten Mr. Baker with litigation, prosecution and other adverse consequences in efforts to coerce the payment of money from Mr. Baker.

62.     On September 13, 2019, Mr. Baker through his attorney, and the defendants named in this complaint through their attorney Rodney A. Giove, agreed to a confidential written settlement agreement and resolved their dispute. As part of the settlement, defendants expressly released Mr. Baker from any and all claims related to the alleged debt. The agreement also provided that any claims for breach of the agreement could be brought only in Kent County, Michigan.

63.     Despite the foregoing, defendants through their employees and agents have once again contacted Mr. Baker by telephone, claimed that Mr. Baker owed money that he does not owe, and threatened Mr. Baker with litigation and other adverse consequences in efforts to coerce the payment of money from Mr. Baker.

64.     On September 17, 2020, defendants' employee and agent, who identified himself as "Max Keller" with "Conflict Resolution Center," also known as "CRC," placed a call from

18

telephone number 954-398-5193 to Mr. Baker's cellular telephone and spoke with Mr. Baker. In the ensuing conversation, defendants' employee and agent made the following representations to Mr. Baker:

a)      Mr. Keller's direct telephone number is 844-881-8614.

b)      Mr. Baker owed $861.80 on an unpaid checking account with Bank of American, N.A., that was charged off by BOA in 2006.

c)      The debt was still within the statute of limitations because Mr. Baker had made arrangements to pay money to defendants in 2019. Baker moved to another residence and failed to provide BOA with Mr. Baker's new residential address.

d)      A lawsuit was being filed against Mr. Baker to collect the debt.

Mr. Baker stated that he did not owe any money to anyone in connection with the account. Mr. Baker stated that he had retained an attorney in 2019 regarding the matter, and that the dispute had been resolved. Mr. Baker stated that defendants would need to contact his attorney regarding the matter. Defendants' employee and agent stated that he was unwilling to resolve the matter through Mr. Baker's attorney.

65.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats of litigation and prosecution, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of consumers' stolen account and personal information.

66.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

67.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Baker's alleged debt.

68.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Baker's alleged debt, increasing the amount by $500.00, from $361.80 to $861.80.

69.     Defendants and their employees and agents falsely represented that Mr. Baker owed a debt that is not owed.

70.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

71.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Baker's personal and financial information, in an effort to coerce the payment of money from Mr. Baker.

72.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

73.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

74.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Baker to collect the alleged debt.

75.     Defendants and their employees and agents falsely represented and falsely implied that the statute of limitations had not yet run on the alleged debt.

76.     Defendants and their employees and agents wrongfully threatened to file a lawsuit

77.     Defendants did not intend to file a lawsuit against Mr. Baker in any court in efforts to collect the alleged debt.

78.     No defendant has ever filed any lawsuit in any court to collect any debt from any consumer.

79.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

80.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

81.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

82.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

83.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

84.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

85.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.

15 U.S.C. § 1692e(3).

86.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

87.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

88.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

89.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

90.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

91.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

92.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

93.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

94.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

95.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

96.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

97.     The FDCPA states that "if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt . . . the debt collector shall not communicate further with the consumer with respect to such debt. . . ." 15 U.S.C. § 1692c(c).

98.     On August 5, 2019, Mr. Baker, through his attorney Phillip C. Rogers, communicated to defendants, in writing, that Mr. Baker refused to pay the alleged debt. A copy of the written communication is attached to this complaint as Exhibit B.

99.     Defendants have violated the FDCPA, 15 U.S.C. § 1692c(c), by continuing to communicate with Mr. Baker in efforts to collect the alleged debt.

100.     The FDCPA states that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows that the consumer is represented by an attorney with respect to such debt . . . ." 15 U.S.C. § 1692c(a)(2).

101.    On August 5, 2019, Mr. Baker's attorney, Phillip C. Rogers, sent an email to defendants, stating that Mr. Rogers represented Mr. Baker with respect to the alleged debt, and demanding that defendants immediately cease all direct communications with Mr. Baker regarding the alleged debt. A copy of the email is attached to this complaint as Exhibit B.

102.    Defendants have violated the FDCPA, 15 U.S.C. § 1692c(a)(2), by continuing to communicate directly with Mr. Baker regarding the alleged debt, with knowledge that Mr. Baker was and remains represented by his attorney, Mr. Rogers, regarding the alleged debt. In further defiance of the law, defendants' employee and agent, Max Keller, stated to Mr. Baker that he would not communicate with Mr. Baker's attorney regarding the alleged debt.

103.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

104.    Defendants and their employees and agents failed to timely send to Mr. Baker a notice containing the information required by 15 U.S.C. § 1692g(a).

105.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

106.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

107.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who

24

refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

108.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

109.    In connection with efforts to collect an alleged debt from Mr. Baker, defendants obtained and used personal information regarding Mr. Baker and his relatives from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

110.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

111.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

112.    The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

113.    The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

114.    The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

115.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained.   18 U.S.C. § 2721(b).

116.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Mr. Baker and his relatives.

117.    Defendants used the database to obtain, disclose and use personal information

regarding Mr. Baker and his relatives.

118.    Defendants made a false representation to the provider of the database to obtain

personal information regarding Mr. Baker and his relatives that was derived from motor vehicle

records.

119.   Alternatively, the entity that obtained Mr. Baker's and his relatives' personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Baker and his relatives that was derived from motor vehicle records.

120.   It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

121.   Defendants knowingly obtained, disclosed and used Mr. Baker's and his relatives' personal information, obtained from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

122.   No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Baker's or his relatives' personal information obtained from the database.

123.   No defendant had Mr. Baker's or his relatives' consent, permission, authorization or waiver to obtain Mr. Baker's or his relatives' personal information from the database.

124.   A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

125.   The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

126.   Defendants intentionally and wilfully violated the DPPA.

127.   Each defendant was aware, or should have been aware, of the unlawful debt

collection practices being used by the other defendants to collect alleged debts.

128.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, and emotional stress, for which he should be compensated in an amount to be established at trial.

**V.      Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

129.    Plaintiff incorporates the foregoing paragraphs by reference.

130.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692c;

b)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

d)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

e)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

131.    Plaintiff incorporates the foregoing paragraphs by reference.

132.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

Dated: September 24, 2020          /s/ Phillip C. Rogers
                                Phillip C. Rogers (P34356)
                                Attorney for Plaintiff
                                6140 28th Street SE, Suite 115
                                Grand Rapids, Michigan 49546-6938
                                (616) 776-1176
                                ConsumerLawyer@aol.com